IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KENNETH DAINTY,

              Plaintiff,

vs.                                         Case No. 10-1245-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

              Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

## I.  General legal standards

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On June 25, 2009, administrative law judge (ALJ) Edmund C. Werre issued his decision (R. at 9-17). Plaintiff alleges that he has been disabled since January 31, 2002 (R. at 9). Plaintiff is insured for disability insurance benefits through December 31, 2007 (R. at 11). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity from his alleged onset date through his date last insured (R. at 11). At step two, the ALJ found that plaintiff had the following severe

impairment: left hand and forearm amputation (R. at 11).[1]  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 12).  After determining plaintiff's RFC (R. at 12), the ALJ found at step four that plaintiff is unable to perform past relevant work (R. at 15).  At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 16).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 17).

**III. Did the ALJ err at step two when he failed to identify certain impairments as severe?**

At step two, the ALJ found that plaintiff had a severe impairment of left hand and forearm amputation (R. at 11).  The ALJ further found that plaintiff's hypertension, diabetes, back fracture, and a history of right elbow injury do not more than minimally affect plaintiff's ability to perform basic work activities, and are therefore non-severe (R. at 11-12).  Plaintiff argues that the ALJ erred by not finding that plaintiff's diabetes, hypertension, back fracture, and right elbow impairment, in combination, were severe impairments.  Plaintiff also asserts that the ALJ erred by failing to consider

---

[1] In 1976, while working on an electrical line, plaintiff was electrocuted.  He suffered a significant injury to his left hand and forearm resulting in amputation at the left mid-forearm (R. at 366).

his right shoulder impairment at all (Doc. 7 at 13-14).

The burden of proof at step two is on the plaintiff.  See Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993)(the claimant bears the burden of proof through step four of the analysis).  A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis."  Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997); see Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of medical severity").  A claimant need only be able to show at this level that the impairment would have more than a minimal effect on his or her ability to do basic work activities.[2]  Williams, 844 F.2d at 751.  However, the claimant must show more than the mere presence of a condition or ailment.  If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity.  Thus, at step two, the ALJ looks at the claimant's

---

[2]Basic work activities are "abilities and aptitudes necessary to do most jobs," 20 C.F.R. § 404.1521(b)[416.921(b)], including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." Social Security Ruling 85-28, 1985 WL 56856 at *3; Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir. 2004).

impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).  A claimant must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled.  20 C.F.R. § 404.1512(c), § 416.912(c).

Plaintiff has failed to point to any medical evidence which states or indicates that his diabetes, hypertension, back fracture, right elbow and/or shoulder impairments would have more than a minimal effect on plaintiff's ability to perform basic work activities.  Therefore, plaintiff failed to meet his burden of proof on this issue.

Even assuming plaintiff met his burden of proving that one or more of these impairments were severe impairments, the issue before the court would be whether it is reversible error if the ALJ fails to list all the severe impairments at step two.  In Brescia v. Astrue, 287 Fed. Appx. 626, 628-629 (10th Cir. July 8, 2008), the claimant argued that the ALJ improperly determined that several of her impairments did not qualify as severe impairments.  The court held that once an ALJ has found that plaintiff has at least one severe impairment, a failure to designate another as "severe" at step two does not constitute reversible error because, under the regulations, the agency at

7

later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  In Hill v. Astrue, 289 Fed. Appx. 289, 291-292 (10th Cir. Aug. 12, 2008), the court held that once the ALJ finds that the claimant has any severe impairment, he has satisfied the analysis for purposes of step two.  The ALJ's failure to find that additional alleged impairments are also severe is not in itself cause for reversal.  However, the ALJ, in determining plaintiff's RFC, must consider the effects of all of the claimant's medically determinable impairments, both those he deems "severe" and those "not severe."

In making his RFC findings, the ALJ stated that he considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  The ALJ also indicated that he considered the opinion evidence (R. at 12).  Furthermore, the ALJ acknowledged that in making an RFC finding, he "must consider all of the claimant's impairments, including impairments that are not severe" (R. at 10).  In light of the fact that the ALJ found other severe impairments at step two, considered all symptoms and evidence when making RFC findings for the plaintiff, and considered all of plaintiff's impairments, including non-severe impairments when making his RFC findings, the court finds no

reversible error by the ALJ at step two.[3]

**IV. Did the ALJ err by not considering plaintiff's obesity?**

Plaintiff argues that the medical evidence indicated that he weighed 240 pounds and was 72.5 inches tall; for that reason, plaintiff argues that the ALJ erred by failing to consider plaintiff's obesity pursuant to SSR 02-1p (Doc. 7 at 15). SSR 02-1p is a social security ruling governing the evaluation of obesity. It states that, when assessing RFC, obesity may cause limitations of various functions, including exertional, postural and social functions. Therefore, an assessment should also be made of the effect obesity has upon the claimant's ability to perform routine movement and necessary physical activity within the work environment. Obesity may also affect the claimant's ability to sustain a function over time. In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. 2002 WL 32255132 at *7. The discussion in the SSR on obesity and RFC concludes by stating that: "As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations." 2002 WL 32255132 at *8.

---

[3] Even though the ALJ did not expressly mention the right shoulder impairment in his decision, Dr. Siemsen expressly mentioned the right shoulder impairment and surgery in his narrative discussion in support of the state agency RFC findings (R. at 387). The ALJ gave "considerable" weight to the RFC assessment affirmed by Dr. Siemsen when making his own RFC findings (R. at 14-15).

However, plaintiff fails to cite to evidence that any medical source diagnosed plaintiff with obesity. Even if such a diagnosis could be ascertained from the records, because of plaintiff's failure to cite to any evidence in the record that his obesity was relevant to his impairments or resulted in greater limitations in his ability to perform work activities, the ALJ did not err by not giving further consideration to plaintiff's obesity. See Callicoatt v. Astrue, 296 Fed. Appx. 700, 702 (10th Cir. Oct. 20, 2008); Briggs v. Astrue, 221 Fed. Appx. 767, 770-771 (10th Cir. Apr. 9, 2007).

**V. Did the ALJ err in his consideration of the opinion evidence of Dr. Varner, plaintiff's treating physician?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports,

not the other way around.  Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations.  If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources.  Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.  Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

11

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion. If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

Dr. Varner opined that plaintiff could only lift 10 pounds, could stand/walk for less than 1 hour in an 8 hour workday, and could sit for 2 hours in an 8 hour workday. He also found that plaintiff could never climb, stoop, kneel, crouch, or crawl, and must avoid any exposure to extreme heat or heights. Dr. Varner further indicated that plaintiff would need to lie down every 2 hours (R. at 397-398). The ALJ provided the following analysis of the opinions of Dr. Varner:

> Because the opinion of Dr. Varner is not well supported, it is not given controlling weight. In the present case, the applicable factors do not support adopting the opinion of Dr. Varner. As to the first two factors, Dr. Varner has treated the claimant on a regular basis for many years and is the

> claimant's primary physician, treating the claimant for all of his ongoing health conditions. (Exhibit 2F, Exhibit 6F -7F) However, with regard to supportability, Dr. Varner has not provided support for the limitations in the opinion. The treatment notes from Dr. Varner lack acute findings and primarily reflect routine care for conditions well managed by medication. (Exhibit 2F, Exhibit 6F-7F) The opinion of Dr. Varner also lacks consistency. The opinion limits the claimant to less than 1 hour standing or walking and 2 hours of sitting throughout an 8 hour day. (Exhibit 8F) While the opinion indicates a need to lie down or recline every 2 hours, this does not entirely account for the claimant's positional needs throughout an 8 hour day. (Exhibit 8F) Dr. Varner appears to be the claimant's primary physician, but does not indicate a specialty relevant to the claimant's impairment.
>
> Additionally, there are other factors that do not support Dr. Varner's opinion. At his hearing, the claimant testified that he is able to at least occasionally lift 30 to 40 pounds, far above the lifting restrictions assessed by Dr. Varner. The claimant's daily activities also contradict Dr. Varner's opinion. In his function report, the claimant indicated spending up to 2 hours on a riding lawn mower. (Exhibit 15E) This activity alone would account for nearly all of the claimant's ability to sit for the entire day under Dr. Varner's restrictions. Further, Dr. Varner's environmental restrictions are inconsistent with the claimant's activities of caring for the animals on his farm, going outdoors every day, and baling hay. (Exhibit 7E, Exhibit 15E) Thus, the opinion of Dr. Varner lacks support, is somewhat inconsistent, and directly contradicts the claimant's description of his daily activities. Therefore, the opinion is given little weight.

(R. at 14).

Plaintiff argues that the opinions of Dr. Varner are entitled to controlling weight; in the alternative, plaintiff argues that his opinions should have been entitled to greater deference (Doc. 7 at 8-13). The court finds that the opinions of Dr. Varner are not entitled to controlling weight in light of the fact that the record also contains a state agency RFC assessment approved by Dr. Siemsen which found that plaintiff's limitations were much less severe than those found by Dr. Varner (R. at 378-387). Dr. Siemsen offered a narrative discussion of the evidence and reasons for his RFC findings (R. at 387). A medical opinion from a treating source is not entitled to controlling weight when it is inconsistent with other substantial evidence in the record.

Furthermore, there is evidence in the record from plaintiff's own testimony that provides a valid basis for giving little weight to the opinions of Dr. Varner. Dr. Varner limited plaintiff to lifting 10 pounds (R. at 397). However, plaintiff testified that he could lift 30 or 40 pounds with his right hand (R. at 30-31). Dr. Varner opined that plaintiff could stand/walk for less than 1 hour in an 8 hour day, and could only sit for 2 hours in an 8 hour day, and would need to lay down every 2 hours (R. at 397-398). However, plaintiff testified that if he could alternate sitting and standing, "I could do that all day I think" (R. at 30). Plaintiff went on to testify that he probably could be on his feet for six hours out of eight hours if he could

alternate sitting and standing.  He also testified that he could sit for one hour before needing to get up (R. at 30).  The ALJ clearly had a valid basis, primarily based on plaintiff's own contradictory testimony, as well as contradictory medical opinion evidence, for giving little weight to the opinions of Dr. Varner.

**VI.  Are the ALJ's RFC findings supported by substantial evidence?**

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence."  The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.  The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.  SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence.  See Southard v. Barnhart, 72 Fed. Appx.

781, 784-785 (10th Cir. July 28, 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions. Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995). When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review. Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

As noted above, the ALJ provided valid reasons for giving little weight to the opinions of Dr. Varner, plaintiff's treating physician. The ALJ gave considerable weight to the state agency RFC assessment affirmed by Dr. Siemsen (R. at 14-15). Dr. Siemsen's narrative summary of the evidence and the basis for his opinions was as follows:

> C[laimant] is a 61 yr old able alleging
> disability since 1/31/2002 due to having one
> hand amputated, diabetes and hbp [high blood
> pressure]. MER indicates hbp and diabetes are

16

> well controlled and non-severe. He has a
> remote hx of left hand amputation and worked
> for a long time with this one arm as an order
> switching clerk for utility company. MER
> suggests he was bought out and took early
> retirement with a one yr severance pay. He
> has been quite active in retirement. MER
> shows he injured his back in 05/02 when he
> was bucked off a horse; the back injury
> resolved. In 12/02 he had bursitis in the rt
> elbow corrected with surgery and resolved
> quickly. In 09/03 he fell and injured his rt
> shoulder. He had rotator cuff surgery and
> this quickly resolved. Determination was that
> he could do light one armed work. Current ADL
> indicates he feeds cattle, mows grass and
> sweeps garage. He says he can lift but only
> with one arm and says he has no limitations
> walking. All of the evidence supports the
> prior RFC for one armed work.

(R. at 387). The court finds that the RFC findings of the ALJ comply with the requirements of SSR 96-8p. The ALJ had valid reasons for giving little weight to the opinions of Dr. Varner. Furthermore, the ALJ could reasonably rely on the opinions of Dr. Siemsen, who provided a narrative explanation summarizing the evidence and setting forth the basis for the RFC findings.

**VII. Are the ALJ's findings at step five supported by substantial evidence?**

At step five, the ALJ found that plaintiff could perform other work that exists in significant numbers in the national economy, including medium work as a machine cleaner and a machine packager, and light work as a deliverer[4] (R. at 16). These

---

[4]The record misidentified the DOT code for this job as 230.633-010 (R. at 16, 38). The actual DOT code for this job is

findings are in accordance with the testimony of the vocational expert (VE) (R. at 32-39).

Plaintiff argues that there "appears to be a conflict" between the VE's testimony that the jobs identified by the VE as jobs that plaintiff could perform do not require the use of two arms and the Dictionary of Occupational Title (DOT) description of those jobs (Doc. 7 at 18-19). However, the VE testified that the DOT generally does not indicate that a job requires the use of both hands (R. at 34), and he further testified that there were no inconsistencies between his testimony and the DOT (R. at 39). In the absence of any evidence of a clear conflict between the DOT and the testimony of the VE (e.g., a statement in the DOT that the jobs identified by the VE require the use of both hands), and in light of the VE's testimony that his opinions do not conflict with the DOT, the court finds that the ALJ could reasonably rely on the testimony of the VE that plaintiff could perform other work in the national economy.

Finally, plaintiff argues that the grids indicate that plaintiff would direct a finding of disability if plaintiff were limited to light work (Doc. 7 at 19).[5] However, plaintiff's RFC

---

230.663-010. DOT at 205.

[5]At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). To meet this burden, the Commissioner may rely on the Medical-Vocational

generally limits him to medium work, with some additional limitations (R. at 12), and the court has found that the RFC findings are supported by substantial evidence.  Furthermore, the ALJ found that, based on the VE's testimony, that plaintiff could perform two medium jobs and one light job in the national economy.  The VE testified that, of the two medium jobs, there were 1,430 of them available in the local economy, 7,840 in the state economy, and 702,880 in the national economy (R. at 16, 37-38).  The 10th Circuit has previously indicated that "far fewer than 1.34 millions jobs" qualifies as a significant number of jobs in the national economy.  Raymond v. Astrue, 621 F.3d 1269, 1274 (10th Cir. 2009); cf. Stokes v. Astrue, 274 Fed. Appx. 675, 684 (10th Cir. Apr. 18, 2008)(finding only 152,000 jobs in the national economy sufficient).  The controlling statues, federal regulations and case law all indicate that the proper focus must be on jobs in the national economy when determining if a significant number of jobs exist that the claimant can perform.  Raymond, 621 F.3d at 1274.  Therefore, even without considering the light job identified by the ALJ, the evidence clearly supports the ALJ's finding that plaintiff can perform medium work that exists in significant numbers in the national economy.

---

Guidelines (grids). 20 C.F.R. Part 404, Subpt. P, App. 2. Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988).  The grids contain tables of rules which direct a determination of disabled or not disabled on the basis of a claimant's RFC category, age, education, and work experience.  Thompson, 987 F.2d at 1487.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Dated this 13th day of September, 2011, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge